IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CR-25-188-D |
| JERRY RAY BROWN, | ) ) ) |
| Defendant. | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

Before the Court is Defendant Jerry Ray Brown's Motion to Suppress [Doc. No. 29], to which the government responded [Doc. No. 32]. On August 4, 2025, the Court held an evidentiary hearing at which Defendant appeared personally and through appointed counsel, Traci Lynn Rhone, and the government appeared through Assistant United States Attorney Daniel Gridley. The Court took the Motion under advisement. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows.

**FINDINGS OF FACT**

The Indictment charges Defendant with one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a). It alleges that on or about March 28, 2025, in the Western District of Oklahoma, Defendant knowingly attempted to take by force, violence, and intimidation from the person and in the presence of bank employees, money belonging to and in the care, custody, control, management, and possession of the FNB Community Bank in Choctaw, Oklahoma.

1

Following the attempted bank robbery, the suspect fled in a silver Nissan Altima with no license plate. Upon reviewing bank security camera footage, Choctaw Police Department officers searched for the silver Nissan in the Flock Safety (Flock) database and ultimately discovered that the suspect vehicle was registered to Defendant's daughter. Flock is a private company that contracts with law enforcement agencies to provide automated license plate reader (LPR) cameras, coupled with a search database.

Defendant moves to suppress any fruits from the Choctaw Police Department's search of the Flock database. Defendant argues that the search of the Flock database was a warrantless, unreasonable search in violation of his Fourth Amendment rights. At the hearing, Michael Goldsticker, Flock's Director of Legal Affairs, testified as to Flock's capabilities, security features, and business model. The Court also heard the testimony of Lieutenant Austin Jacox with the Choctaw Police Department, who searched the Flock database following the attempted bank robbery. The evidence establishes the following facts pertinent to the Motion, as found by the Court.

## Flock Cameras and Database

Flock cameras are infrared, motion-activated cameras designed to take an image of the rear of a vehicle passing by a fixed point. The cameras are stationary and one-directional, and they do not pan, tilt, or zoom. The cameras are usually affixed to poles and placed within 15 feet of a public road. The cameras have a narrow field of view and can capture two lanes. They are powered at all times, but are only activated by motion.

When a vehicle passes a Flock camera, several pictures are taken of the rear of the vehicle, and the Flock system selects and uploads the clearest image to the Flock database.

Flock cameras cannot detect the captured vehicle's speed or route of travel, or identify individuals inside the vehicle. As an image is uploaded, Flock's system identifies the vehicle by color, type, make, tag number, type of tag[1], and a limited number of other characteristics, such as whether the vehicle has a roof rack or toolbox.

Flock contracts with law enforcement agencies to allow them to search Flock's database of images. Only law enforcement officers authorized to access the Flock database can conduct a search. Once in the database, an image is stored for thirty days before it is automatically deleted from the system. Before an image is automatically deleted, a law enforcement officer can download the image from the Flock database. Flock retains ownership of the Flock cameras, but the data and images are owned exclusively by the law enforcement customer. Flock also allows law enforcement agencies to share information from Flock cameras with other law enforcement customers.

A Flock-credentialed officer can search the Flock database by date, time, tag number, and vehicle characteristics. A user cannot search the Flock database for individuals. An officer must have a Flock login to search the Flock database, and each search is recorded and subject to audit. The Flock database is encrypted and stored in Amazon's cloud that is designed for secure government information, and the Flock system has never had a data breach.

---

[1] Currently, only tags from the fifty states are recognized by Flock's system. Flock cannot recognize Tribal tags or vanity tags, although the Flock database will still process the actual tag numbers and the vehicle's other characteristics.

Flock also offers "hot lists," which send notifications to law enforcement agencies anytime a particular license plate number passes a Flock camera, or anytime a passing vehicle is associated with the National Crime Information Center (NCIC) list, an Amber alert, or a silver alert.

The City of Choctaw has three cameras. They have a sharing relationship with neighboring communities, and Choctaw has also opted in to a larger pool that allows them to share with any other agencies in the sharing pool. There are also four additional cameras located in Choctaw that are privately used by neighborhoods. Although those private neighborhoods may opt in to sharing their information with law enforcement, it is unclear if they currently do so, and Choctaw Police did not obtain data from those cameras in connection with this case.

### Choctaw Police Department's Flock Search

Lt. Jacox has over five years of experience as a police officer with the City of Choctaw. When the City of Choctaw started using the Flock system, Lt. Jacox received brief training on how to search the Flock database, and he currently uses the Flock system about once per shift. Per Choctaw Police Department policy, the Flock system and other LPRs must be used exclusively for legitimate law enforcement purposes.

On March 28, 2025, Lt. Jacox responded to the scene of the attempted bank robbery at FNB Community Bank in Choctaw, Oklahoma. While at the bank, Lt. Jacox reviewed bank surveillance footage and identified a suspect vehicle – a silver Nissan Altima, approximate model year 2012-2015, with a sunroof, distinct wheels and tail lights, and

damage to the front passenger-side fender. Lt. Jacox could not initially discern from the surveillance footage whether or not the vehicle had a license plate.

Thereafter, Lt. Jacox conducted a search of the Flock database for a Silver Nissan sedan for approximately two hours before and after the attempted bank robbery, and for approximately one week before and after the attempted bank robbery. At first, Lt. Jacox searched only Choctaw's three Flock cameras.[2]

Lt. Jacox's two-week search period yielded hundreds of images. After looking through the images for vehicle characteristics of the suspect vehicle, Lt. Jacox found just one vehicle that was consistent with the suspect vehicle's characteristics. The vehicle was captured by a Choctaw Flock camera on the day of the robbery. At the time the Flock image was taken, the vehicle had a Tribal tag with a tag number of CA7753. The government admitted Exhibits 1 and 2, which reflect the Flock images of the vehicle that Lt. Jacox identified as having characteristics consistent with the suspect vehicle from the bank's surveillance footage.

Lt. Jacox then searched the vehicle's tag number in the Flock database, expanding his search to all devices that were shared with Lt. Jacox's login and with the Choctaw Police Department. Lt. Jacox believed that other Choctaw Police Department officers and the Federal Bureau of Investigation also ran tag searches in Flock for the vehicle. The tag number search revealed two hits from Choctaw's Flock cameras from the day of the

---

[2] Lt. Jacox's Flock account does not have access to the four additional cameras in Choctaw that are used by private neighborhoods, and Lt. Jacox has never attempted to request information from the four neighborhood cameras.

attempted bank robbery, which was the only day that the vehicle had been captured in Choctaw by the Flock system. The tag number search also revealed that the vehicle had been in the Tulsa area prior to the day of the attempted bank robbery.

After running a search in the OLETS (Oklahoma Law Enforcement Telecommunications System) database, Choctaw police officers discovered that the suspect vehicle was registered in Defendant's daughter's name, in Skiatook, Oklahoma. At the hearing, counsel for the government stipulated that the Flock database searches ultimately led officers to identify Defendant as a suspect.

Defense counsel proffered the additional information that if Defendant were to testify, he would testify that he was not aware of the Flock cameras or their capabilities, and he did not know that the Flock cameras could obtain information about his vehicle without a warrant.

## CONCLUSIONS OF LAW

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "In order to challenge the lawfulness of a search and seizure under the Fourth Amendment, a defendant must first establish his or her standing to do so." *United States v. Marchant*, 55 F.3d 509, 512 (10th Cir. 1995). "Consequently, 'a threshold issue in deciding a motion to suppress evidence is whether the search at issue violated the rights of the particular defendant who seeks to exclude the evidence.'" *United States v. Soto*, 988 F.2d 1548, 1552 (10th Cir. 1993) (quoting *United States v. Rascon*, 922 F.2d 584, 586 (10th Cir. 1990)).

Defendant has the burden to establish standing. *See United States v. Creighton*, 639 F.3d 1281, 1286 (10th Cir. 2011). To do so, he must establish "(1) a subjective expectation of privacy in the property searched, and (2) that society would recognize that expectation of privacy as objectively reasonable." *Marchant*, 55 F.3d at 513.

At the suppression hearing, defense counsel proffered testimony, explaining Defendant's understanding that Flock cameras could not capture information about his vehicle without a warrant. The Court assumes without deciding that Defendant's proffer is sufficient to establish that Defendant had a subjective expectation of privacy in his daughter's vehicle while travelling on public roadways.

To satisfy the objective component, Defendant must show that his subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citation omitted). A court "must consider all of the facts and circumstances of the case in determining whether a defendant's subjective expectation of privacy is legitimate." *United States v. Carr*, 939 F.2d 1442, 1445 (10th Cir. 1991).

The Supreme Court has held that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281 (1983). Although Defendant does not have a reasonable expectation of privacy in his movements in a vehicle, he argues that the Flock database searches amount to a warrantless tracking of his "totality of movements," premised on *Carpenter v. United States*, 585 U.S. 296 (2018).

In *Carpenter*, the Supreme Court held that the defendant had a reasonable expectation of privacy in his cell-site location information (CSLI), which essentially catalogued the defendant's movements over a period of 127 days. *Carpenter*, 585 U.S. at 302. The Court reasoned that "[m]apping a cell phone's location over the course of 127 days provides an all-encompassing record of the holder's whereabouts[,]" including "an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations.'" *Id.* at 311 (citing *United States v. Jones*, 565 U.S. 400, 415 (2012)).

In this case, Defendant contends that the search of the Flock database is akin to the CSLI search in *Carpenter*, where the Supreme Court required a warrant. Defendant contends that the Flock system is comparable to the CSLI in *Carpenter* because 1) Flock provides highly detailed data of a sensitive nature to law enforcement; 2) Flock produces and stores huge quantities of data; 3) Flock's surveillance is widespread and indiscriminate; and 4) Flock's database allows law enforcement automatic and retrospective access to the data.

First, concerning the quality of the Flock data, the Court finds that the City of Choctaw's three Flock cameras do not provide an "intimate window into a person's life," nor do they allow law enforcement to "track a person's movements on any major road in town, at any time of day, on any day of the year," as Defendant contends [Doc. No. 29, at 10]. If a vehicle passes by one of the three Flock cameras, the camera will capture an image of the rear of the vehicle, logging the date, time, and location of the camera. In this case, the suspect vehicle was captured on two different Flock cameras on the day of the

attempted bank robbery, and officers were able to run a state-wide Flock search to discover that the vehicle was primarily located in the Tulsa area. The Flock images do not reveal the number or identity of the occupants of the vehicle, nor do the images expose any intimate details of the occupants' personal lives. Other than the two hits of the suspect vehicle on the City of Choctaw's Flock cameras, the Flock system cannot identify the vehicle's starting point, route, destination, or whether any stops were made. The Flock system—as used by the City of Choctaw—falls short of the pervasive, continuous, and intimate tracking of the individual defendant in *Carpenter*.[3]

Defendant also argues that the Flock system produces and stores significant amounts of data and allows law enforcement automatic and retrospective access to the data. In *Carpenter*, the Supreme Court noted that the quantity of CSLI and the retrospective nature of the data gave police "access to a category of information otherwise unknowable." *Id.* at 311. The *Carpenter* Court explained that because the CSLI could be retained for five years, the "police need not even know in advance whether they want to follow a particular

---

[3] Various district courts have come to the same conclusion for other cities' use of the Flock system and similar license plate reader databases. *See United States v. Jackson*, Case No. CR-24-10010-JWB, 2025 WL 1530574, at *7 (D. Kan. May 29, 2025) ("[G]iven the limited amount of information available to law enforcement, the court is not convinced that the amount of data derived from the Flock System is constitutionally suspect."); *United States v. Martin*, 753 F. Supp. 3d 454, 456 (E.D. Va. Oct. 11, 2024) ("The three individual snapshots of [the defendant's] brief location at specific times hardly rise to the level of persistent, unceasing public surveillance that the court[] found troublesome in *Carpenter*[.]"); *United States v. Porter*, Case No. CR-21-87, 2022 WL 124563, at *3 (N.D. Ill. Jan. 13, 2022) (denying motion to suppress evidence obtained from license plate reader database search where "the database query response did not reveal intimate details of [the defendant's] daily life, nor did it track his every movement."); *but see Commonwealth v. Bell*, 113 Va. Cir. 316, at *4 (2024) (granting motion to suppress evidence obtained from Flock searches where the City of Norfolk had installed 172 Flock cameras throughout the city).

individual," but whoever the suspect turns out to be "has effectively been tailed every moment of every day for five years[.]" *Id.* at 312. Conversely, with the Flock system, images are automatically deleted after 30 days, unless downloaded by law enforcement as part of an investigation. And, as stated above, the type of data stored in the Flock system does not reveal intimate details of individuals' lives, but is limited to when a vehicle passed a certain Flock camera and the outward appearance of the rear of the vehicle.

Finally, the Court disagrees with Defendant that the City of Choctaw's three Flock cameras amount to widespread mass surveillance. Although it is possible that the City of Choctaw could significantly expand its Flock program to a point where the number of cameras allowed for pervasive, widespread tracking of individuals' whereabouts, the Court is confident that three cameras across the City of Choctaw do not currently run afoul of the Fourth Amendment. Defendant's argument related to what the Flock system *could* do in the future is mere speculation. *See Martin*, 753 F. Supp. 3d at 476 ("This Court must rule on the facts as they are and may not speculate about what the future may hold for Flock's capabilities.").

For these reasons, the Court finds that Defendant has not met his burden to show that his Fourth Amendment rights were violated by the search of the Flock system for the suspect vehicle. Defendant has not shown a legitimate expectation of privacy that society would recognize as reasonable. *See Marchant*, 55 F.3d at 513.

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress [Doc. No. 29] is **DENIED**.

**IT IS SO ORDERED** this 25th day of August, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge