IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CR-25-188-D |
| JERRY RAY BROWN, | ) ) ) |
| Defendant. | ) ) |

## **ORDER**

Before the Court is Defendant's Motion to Exclude 404(b) Evidence [Doc. No. 24]. Thereafter, the government filed a Rule 404(b) Notice and Response to Defendant's Motion to Exclude 404(b) Evidence [Doc. No. 26], and Defendant filed a reply [Doc. No. 31]. The government also filed a Notice of Supplemental Authority [Doc. No. 45], citing *United States v. Jones*, ___ F.4th ___, 2025 WL 2394854 (10th Cir. Aug. 19, 2025).

## **BACKGROUND**

The Indictment charges Defendant with one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) [Doc. No. 19]. It alleges that on or about March 28, 2025, in the Western District of Oklahoma, Defendant knowingly attempted to take by force, violence, and intimidation from the person and in the presence of bank employees, money belonging to and in the care, custody, control, management, and possession of the FNB Community Bank in Choctaw, Oklahoma. *Id.*

Per its 404(b) notice, the government intends to introduce evidence related to Defendant's prior conviction for two counts of bank robbery in the Northern District of

1

Oklahoma, Case No. CR-20-240.[1] In that case, Defendant pled guilty to the March 12, 2020 robbery of Oklahoma Capital Bank in Skiatook, Oklahoma, and the May 7, 2020 robbery of Exchange Bank in Sperry, Oklahoma. On November 9, 2022, Defendant was sentenced to 51 months of imprisonment, and he was released from BOP custody on October 8, 2024.

In Defendant's Motion to Exclude 404(b) Evidence [Doc. No. 24], Defendant asks that the Court exclude evidence related to Defendant's previous bank robberies as improper character evidence under FED. R. EVID. 404(b).

## DISCUSSION

Motions in limine are not formally recognized under the Federal Rules; however, district courts have long recognized the potential utility of pretrial rulings under the courts' inherent powers to manage the course of trial proceedings. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine presents the trial court with the opportunity 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1218 (D. Kan. Apr. 10, 2007) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

Although such pretrial rulings can save time and avoid interruptions at trial, "a court is almost always better situated during the actual trial to assess the value and utility of evidence. Consequently, a court should reserve its rulings for those instances when the

---

[1] The Court takes judicial notice of Defendant's Northern District case.

evidence plainly is 'inadmissible on all potential grounds' … and it should typically defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed[.]" *Wilkins*, 487 F.Supp.2d at 1218-19 (citations omitted). Some in limine rulings are preliminary in nature because the required balancing may be reassessed as the evidence is actually presented. Accordingly, a "district court 'may change its ruling at any time for whatever reason it deems appropriate.'" *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)).

I.  **Rule 404(b)**

Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). In determining whether evidence is admissible under Rule 404(b), courts address the following four factors:

> (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the court must give a proper limiting instruction, if it is requested by the defendant.

*United States v. Moran*, 503 F.3d 1135, 1143-44 (10th Cir. 2007) (citing *Huddleston*, 485 U.S. at 691-92). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Jones*, ___ F.4th ___, 2025 WL 2394854, at *8 (10th Cir. Aug. 19, 2025) (citing *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)).

      **a.    Proper Purpose**

"Evidence is admitted for a proper purpose if allowed for one or more of the enumerated purposes in Rule 404(b)." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006). "[I]f the other act evidence is relevant and tends to prove a material fact other than the defendant's criminal disposition, it is offered for a proper purpose under Rule 404(b) and may be excluded only under Rule 403." *See Tan*, 254 F.3d at 1208.

Here, the government seeks to introduce evidence of Defendant's previous conviction for two separate bank robberies, occurring in March and May of 2020, to prove Defendant's identity and intent related to the attempted bank robbery charged in this case.

"[Tenth Circuit] cases interpreting Rule 404(b) allow evidence that tends to show the defendant's identity as the perpetrator of the charged offense because the defendant proceeded by a unique *modus operandi* evident in prior crimes." *United States v. Smalls*, 752 F.3d 1227, 1238 (10th Cir. 2014); *see also United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) ("We have held that to prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a 'totality of the comparison,' the acts share enough elements to constitute a 'signature quality.'"). Non-exhaustive "[e]lements relevant to a 'signature quality' determination include the following: geographic location;

4

the unusual quality of the crime; the skill necessary to commit the acts; or use of a distinctive device." *Smalls*, 752 F.3d at 1238 (citing *Shumway*, 112 F.3d at 1420). Further, "the weight to be given to any one element and the number of elements necessary to constitute a 'signature' are highly dependent on the elements' uniqueness in the context of a particular case. In other words, a few highly unique factors may constitute a 'signature,' while a number of lesser unique factors 'although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together.'" *Shumway*, 112 F.3d at 1420 (citing *United States v. Myers*, 550 F.2d 1036, 1045 (5th Cir. 1977)).

The government contends that the 2020 bank robberies are sufficiently similar to the attempted bank robbery charged in this case to constitute a signature quality for identity purposes. The Court agrees. In both of the 2020 robberies, Defendant targeted regional banks in small towns, Skiatook and Sperry, on the outskirts of Tulsa. The target of the attempted robbery charged in this case was a regional bank in Choctaw, a small town outside of Oklahoma City. The government provided photographs of the three banks [Doc. No. 26-1, at 1]. All three of the banks targeted were stand-alone buildings with large parking lots, and each bank was right next to or surrounded by a large, open field. The government suggests that targeting these types of buildings limited the number of nearby witnesses and surveillance systems.

The government also provided photos of Defendant during the 2020 bank robberies to compare to the perpetrator's appearance in the 2025 attempted bank robbery [Doc. No. 26-2, at 1]. In all three cases, the perpetrator is wearing a ski-type or cloth mask, covering

his face, neck, and ears; long pants; a long-sleeved sweatshirt/jacket with a hood; and black gloves. In the 2020 Capital Bank robbery and the 2025 attempted bank robbery, the perpetrator has the hood of his sweatshirt up to cover his head, but in the 2020 Exchange Bank robbery, Defendant covered his head with a baseball cap. In all three cases, the perpetrator carried a black, medium-sized duffle bag.

The government also notes that in all three instances, the perpetrator did not use any type of weapon or demand note, and he specifically demanded money "from the vault." Further, in the 2020 Capital Bank robbery, Defendant fled in a vehicle with the tag removed, like the government alleges Defendant did in this case.

The Court acknowledges, as pointed out by Defendant, that some of these circumstances (demanding money from a teller, *e.g.*) occur in many or most bank robberies. However, the similarities between the geographic elements of the small-town banks targeted, the appearance of the perpetrator, and the modes of conducting the 2020 and 2025 bank robberies are of "significant probative value when considered together." *See Shumway*, 112 F.3d at 1420. Viewing the "totality of the comparison" between Defendant's 2020 bank robberies and the attempted bank robbery charged in this case, the Court finds that the acts share enough elements to constitute a signature quality.

Defendant's remaining arguments to the contrary are unavailing. Defendant argues that five years elapsed between the robberies in March and May of 2020, and the charged conduct in this case, occurring in March of 2025. The Court attaches little significance to the five-year time difference, however, because Defendant was indicted for the 2020 bank

robberies in October of 2020, and he was not released from BOP custody until October 8, 2024 [Doc. No. 26, at 2].

Defendant also points out that Sperry and Skiatook, Oklahoma, are approximately 100 miles away from Choctaw, Oklahoma. Regardless of the distance between Sperry/Skiatook and Choctaw, there are other geographic similarities between these small towns. *See United States v. McGuire*, 27 F.3d 457, 461 (10th Cir. 1994) ("The common scheme or plan was that in every instance McGuire looked to medium-sized Midwestern cities in order to find a small branch bank with few employees. Also, McGuire was looking for a bank that had easy access to an interstate in order to facilitate a get-away."). Sperry, Skiatook, and Choctaw are all small towns located on the outskirts of larger metropolitan areas in Oklahoma. Further, Defendant's inclusion of population information for Sperry (1,033), Skiatook (8,553), and Choctaw (12,208) just confirms that these are small towns.[2]

Accordingly, the Court finds that the evidence related to Defendant's 2020 bank robberies is being offered for a proper purpose, to establish identity.[3]

---

[2] Defendant also argues that the Sperry bank is a "community bank," the Skiatook bank is a "local bank," and the Choctaw bank is a "locally owned community bank." The Court does not see a distinction here. Further, the pictures of the banks provided by Defendant [Doc. No. 31, at 14-15] are unhelpful. Not only are the pictures extremely zoomed out, but they have also been cropped to exclude one of the main similarities between the structures: the large open fields to the right of each structure.

[3] The Court reserves a decision on whether the prior-acts evidence could be used for the purpose of establishing that Defendant intended to take money from the bank "by force and violence, or by intimidation." *See* 18 U.S.C. § 2113. "The general guiding principle is that the degree to which the non-propensity issue actually is disputed in the case will affect the probative value of the other-act evidence." *See United States v. Gomez*, 763 F.3d 845, 859 (7th Cir. 2014). In this case, the Court is aware of Defendant's intent to rely on an alibi defense [Doc. No. 53]. If he does, it is unlikely that Defendant would also assert at trial that he was at the bank, but did not intend to take money by use of force, violence, or intimidation. However, because defense strategies can change, the

### b.  Relevance

Next, the Court finds that evidence of the 2020 bank robberies is plainly relevant to this case. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. Here, evidence showing that Defendant conducted two prior bank robberies that share a signature quality with the attempted bank robbery charged in this case makes Defendant's involvement with the attempted bank robbery more probable. *See United States v. Porter*, 881 F.2d 878, 887 (10th Cir. 1989) ("Showing that [the defendant] was involved in the Mayfield burglary attempt, and that this incident shared a common *modus operandi* with the bank burglaries, makes his involvement in the bank burglaries more probable."). And, as stated above, the Court finds that the five-year span between the 2020 bank robberies and the attempted bank robbery charged in this case does not render the prior-acts evidence irrelevant, especially considering that Defendant was under indictment or incarcerated for the 2020 bank robberies for most of that time frame.

### c.  Rule 403

The third factor dictates that the evidence's "probative value must not be substantially outweighed by its potential for unfair prejudice under Rule 403." *Moran*, 503 F.3d at 1143-44; *see also* FED. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

---

Court reserves its ruling on whether the 2020 bank robberies could also be offered for the purpose of proving intent.

presenting cumulative evidence."). Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (citation omitted).

Here, the 2020 bank robberies are highly probative of Defendant's identity with respect to the attempted bank robbery charged in this case, especially considering Defendant intends to rely on an alibi defense. *See Porter*, 881 F.2d at 887 ("[T]he evidence was probative of the identity of the accused, an issue of clear importance to this case in light of [the defendant's] attempt to raise an alibi defense."). The Court finds that this probative value is not substantially outweighed by a danger of unfair prejudice. *See Caraway*, 534 F.3d at 1301 ("Evidence is not unfairly prejudicial simply because it is damaging to [a party's] case."). Contrary to Defendant's assertion that the evidence is being offered only to show Defendant's criminal disposition, the Court finds that the prior bank robberies have significant probative value and that any risk of undue prejudice can be lessened with a proper limiting instruction, addressed below.

### d.    Limiting Instruction

The final factor requires the Court to give a limiting instruction if requested by Defendant. The government does not oppose a limiting instruction for any evidence admitted under Rule 404(b). Accordingly, the parties may submit proposed limiting instructions for the Court's consideration.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude 404(b) Evidence [Doc. No. 24] is **DENIED**.[4] This Order does not preclude either party from asserting specific, contemporaneous objections at trial, which will be addressed outside the hearing of the jury.

**IT IS FURTHER ORDERED** that any proposed limiting instructions shall be submitted on or before September 8, 2025.

**IT IS SO ORDERED** this 4th day of September, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] In his reply [Doc. No. 31], Defendant also contends that it would be improper to use the prior-acts evidence for impeachment purposes, under FED. R. EVID. 609. Since, Defendant has filed a second Motion in Limine [Doc. No. 52], which includes this argument. The Court will address this issue, if necessary, when ruling on Defendant's second Motion in Limine [Doc. No. 52], and with the benefit of the government's response.