IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-25-188-D |
| ) | |
| JERRY RAY BROWN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant's Amended Omnibus Motions in Limine [Doc. No. 68], to which the government filed a response [Doc. No. 72]. The matter is fully briefed and at issue.

## BACKGROUND

The Indictment charges Defendant with one count of attempted bank robbery, in violation of 18 U.S.C. § 2113(a) [Doc. No. 19]. It alleges that on or about March 28, 2025, in the Western District of Oklahoma, Defendant knowingly attempted to take by force, violence, and intimidation from the person and in the presence of bank employees, money belonging to and in the care, custody, control, management, and possession of the FNB Community Bank in Choctaw, Oklahoma. *Id.*

In a previous Order [Doc. No. 57], the Court denied Defendant's Motion to Exclude 404(b) Evidence [Doc. No. 24] regarding Defendant's prior conviction for two counts of bank robbery in the Northern District of Oklahoma, Case No. CR-20-240. In that case, Defendant pled guilty to the March 12, 2020 robbery of Oklahoma Capital Bank in

1

Skiatook, Oklahoma, and the May 7, 2020 robbery of Exchange Bank in Sperry, Oklahoma. On November 9, 2022, Defendant was sentenced to 51 months of imprisonment, and he was released from BOP custody on October 8, 2024.

In his Amended Omnibus Motions in Limine [Doc. No. 68], Defendant seeks to exclude evidence and testimony on several items, each of which are addressed below.

## DISCUSSION

Motions in limine are not formally recognized under the Federal Rules; however, district courts have long recognized the potential utility of pretrial rulings under the courts' inherent powers to manage the course of trial proceedings. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "A motion in limine presents the trial court with the opportunity 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. Apr. 10, 2007) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

Although such pretrial rulings can save time and avoid interruptions at trial, "a court is almost always better situated during the actual trial to assess the value and utility of evidence. Consequently, a court should reserve its rulings for those instances when the evidence plainly is 'inadmissible on all potential grounds' … and it should typically defer rulings on relevancy and unfair prejudice objections until trial when the factual context is developed[.]" *Wilkins*, 487 F. Supp. 2d at 1218-19 (citations omitted). Some in limine rulings are preliminary in nature because the required balancing may be reassessed as the evidence is actually presented. Accordingly, a "district court 'may change its ruling at any time for

whatever reason it deems appropriate.'" *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996) (quoting *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995)).

### I.  Prior Criminal History

Defendant first seeks to exclude evidence of his above-referenced prior conviction for two counts of bank robbery in the Northern District of Oklahoma. Defendant urges the Court to re-evaluate its prior Order [Doc. No. 57], by which the Court denied Defendant's first motion in limine regarding the 2020 bank robberies. Upon consideration, the Court finds no reason to reconsider its previous ruling that Defendant's prior conviction is admissible under FED. R. EVID. 404(b), and that its probative value is not substantially outweighed by a danger of unfair prejudice under Rule 403.

For the reasons stated in the Court's prior Order [Doc. No. 57], Defendant's motion in limine is **DENIED** on this point.

### II.  Improper Impeachment Evidence

Defendant next seeks to exclude evidence of his prior conviction as improper impeachment evidence under Rule 609. *See* FED. R. EVID. 609. Rule 609 dictates when a witness's character for truthfulness may be attacked by evidence of a criminal conviction. In his motion in limine, Defendant argues only that his prior conviction for two counts of bank robbery does not involve a "dishonest act or false statement," as required by Rule 609(a)(2). In doing so, Defendant ignores Rule 609(a)(1)(B), which provides:

> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence [of a criminal conviction]:
>
> …

3

> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant.

FED. R. EVID. 609(a)(1)(B). Defendant does not argue that his prior conviction was improper impeachment evidence under subsection (a)(1)(B), so the Court will not address the issue here. The Court notes, however, that if evidence of Defendant's prior conviction is admitted under Rule 404(b), the Court can discern little to no additional danger of unfair prejudice by allowing the evidence to be used for impeachment purposes under Rule 609(a)(1)(B). Defendant's motion in limine is **RESERVED** on this point.

### III.  Improper Opinion Evidence

Defendant also requests that the Court preclude the government and its witnesses from opining (or referencing any opinion) that Defendant is the individual in the surveillance footage from the 2020 bank robberies *and* the surveillance footage from the attempted bank robbery charged in this case. This issue was the subject of the Court's previous Order [Doc. No. 57], in which the Court analyzed the "totality of the comparison" between the 2020 bank robberies and the attempted bank robbery charged in this case and found that the acts share enough elements to constitute a "signature quality." *See United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir. 1997) ("We have held that to prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a totality of the comparison, the acts share enough elements to constitute a signature quality.") (internal quotations and citation omitted).

In line with its prior Order [Doc. No. 57], the Court will allow surveillance images from the 2020 bank robberies and the attempted bank robbery charged in this case to be shown for comparison. Because the government did not respond to Defendant's motion in limine regarding witnesses opining on whether Defendant is the individual shown in the 2025 footage, the Court is unsure as to whether the government intends on eliciting such testimony. Thus, Defendant's motion in limine will be **RESERVED** on this point.

Defendant also seeks to preclude the government from using Defendant's daughter to identify him as the individual involved in the attempted robbery charged in this case. Per the government's response [Doc. No. 72, at 3], the government does not intend to do so. Thus, this portion of Defendant's motion in limine is **DENIED** as **MOOT**.

### IV. Cell Phone Tower Analysis

Defendant further seeks to exclude any testimony or evidence "purporting to show [Defendant's] location in the Choctaw area at certain times based on a cell phone tower analysis, call detail records (CDRs) or CAST analysis."[1] [Doc. No. 68, at 11]. Defendant argues that the cell site analysis is the product of unreliable "junk science," inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 575, 593-94 (1993).

#### a. Legal Standard

Rule 702 codifies the Supreme Court's decision in *Daubert* regarding the admissibility of expert opinion testimony and defines the trial court's gatekeeping role. Rule 702 provides:

---

[1] "CAST" refers to the FBI's Cellular Analysis Survey Team.

5

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. In considering whether an expert's opinion is admissible, the Court performs a two-step analysis. First, the Court must "determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion." *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (internal quotation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable" under the principles set forth in *Daubert*, and relevant in that the opinion will assist the trier of fact. *See id.*; *see also Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).

  **b.**  **Discussion**

  As a preliminary matter, the Court must determine whether Special Agent Andrew Kerstetter is qualified by knowledge, skill, experience, training, or education to render the opinions to be offered. Other than a general statement that "testimony of this sort cannot be offered by a lay person unfamiliar with and untrained in the relevant scientific fields," Defendant does not specifically challenge Agent Kerstetter's qualifications to render the

opinions stated in the CAST analysis he performed [Doc. No. 68, at 12]. Nonetheless, the government provided the following on Agent Kerstetter's qualifications:

> Agent Kerstetter has been an FBI Special Agent since 2007 and a member of the FBI's cellular analysis survey team ('CAST') since 2014. As a CAST member, Agent Kerstetter has received extensive training on cell phone technology and geo-location, including training provided by the cellular provider in this case, Verizon. He has routinely testified as an expert on cell site analysis in court, including recent cases in this district.

[Doc. No. 72, at 2] (collected cases omitted). The government also clarified that Agent Kerstetter will not attempt to place Defendant's phone at a precise location, but that the CAST analysis merely "analyzed the cell-site sector used to show the general location of the phone at different times." *Id.* at 7.

Defendant does not appear to contend that any particular methodology employed by Agent Kerstetter fails under *Daubert*. Rather, Defendant contends that CAST analyses in general are not based on reliable scientific principles and cannot be used to "pinpoint" Defendant's location. However, as stated above, the government has clarified that the CAST analysis does not pinpoint Defendant's phone at a precise location, but only places the phone in a general location. As noted by the government, courts routinely allow expert testimony involving cell-tower analyses to determine the general location of a phone, provided that proper foundation for the testimony is laid [Doc. No. 72, at 6-7].

Defendant also argues that the CAST analysis "is based on the false assumption that a cell phone connects or is located to the closest cell phone tower at the time a call is placed or received." [Doc. No. 68, at 12]. However, the government's explanation of Agent

7

Kerstetter's CAST analysis does not support Defendant's argument. As provided in the government's Notice of Expert Witness [Doc. No. 34]:

> Special Agent Kerstetter is expected to testify at trial that locating cellular phones is accomplished by obtaining call detail records ('CDRs') from the cellular provider for a particular device or phone number. … [CDRs] document the cell tower and cell sector ('cell site') which served the cell phone during this activity. Used in conjunction, the CDRs and a list of cell site locations illustrate an approximate location of the target cell phone when it initiated contact with the network. Additionally, the geographic area can be further identified by Special Agent Kerstetter based on his analysis of the timing advance records [(TARs)] which in addition to a particular cellular site provide an approximate distance the cellular phone was located from the cellular site as it interacted with the network. … Special Agent Kerstetter will explain how Timing Advance data is used to approximate the distance that the cell phone is away from the tower by analyzing the location of the tower that was used, the sector that was used, and the time it takes the signal to travel between the cellphone and the tower.

*Id.* at 2-3. Based on the government's description of Agent Kerstetter's testimony, the Court anticipates that Agent Kerstetter's report will analyze the subject phone's CDRs and TARs to approximate the distance between the phone and connecting tower in order to provide a general location.[2] Other courts have deemed such analyses of CDRs and TARs sufficiently reliable under *Daubert*. *See, e.g.*, *United States v. Hill*, Case No. CR-24-73-JFH, 2025 WL 291168, at *4 (E.D. Okla. Oct. 14, 2025) (denying *Daubert* motion for CAST agent's testimony involving the use of CDRs and TARs to "determine the approximate location"

---

[2] If Agent Kerstetter attempts to rely on the assumption that a cell phone connects to the closest tower when placing a call—or if Agent Kerstetter intends on opining as to the precise location of the subject cell phone—Defendant may re-urge this motion in limine at trial. However, based on the government's description of Agent Kerstetter's testimony, the Court denies Defendant's motion in limine at this time.

of a cell phone at a given time). For these reasons, Defendant's motion in limine is **DENIED** on this point.[3] Of course, defense counsel is free to cross-examine Agent Kerstetter on his CAST analysis and related testimony at trial.

V.    **Verizon Records**

Next, Defendant requests that the Court prohibit the government from introducing "cell phone data" from the Verizon device. Per the government's Notice of Intent to Offer Certified Business Records Through Written Declaration [Doc. No. 40], the Court understands these records to reflect data copied from a Verizon cell phone with a telephone number of 918-405-3633, to include "incoming and outgoing call and text (SMS) records, data access records, subscriber information, and tower/location data." *Id.* at 1.

In his motion in limine, Defendant first seeks exclusion of the Verizon records as irrelevant because "[t]he data includes information that a certain phone number received certain calls, and information that a certain phone had service routed through various cell towers at undetermined times." [Doc. No. 68, at 14]. In its response, the government explains that the Verizon records are clearly relevant to a core issue in this case because the Verizon records and CAST analysis "indicate[] that [Defendant's] phone was in the area of the FNB Bank at the approximate time of the attempted robbery." [Doc. No. 72, at 8]. The government also notes that Defendant is expected to rely on an alibi defense, claiming he was at some other location at the time of the offense. Upon consideration, the Court finds that the Verizon

---

[3] Defendant did not request a *Daubert* hearing in his motion in limine. To the extent that Defendant intended to do so, the Court finds that Defendant's challenge under *Daubert* does not require an evidentiary hearing. *See United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) ("*Daubert* does not mandate an evidentiary hearing.").

records are relevant, provided the government lays a proper foundation, especially with respect to linking the cell phone to Defendant.

Defendant also concludes that the Verizon records are hearsay and that they do not qualify as business records under FED. R. EVID. 803(6). In response, the government has provided a certificate of authenticity [Doc. No. 72-2], which was signed by Verizon's custodian of records. The certificate states that the Verizon records are true and accurate copies of the records created from the information maintained by Verizon in the actual course of business; that it is Verizon's ordinary practice to maintain such records; and that said records were made contemporaneously with the stated events or within a reasonable time thereafter. *Id.* The government also cites to *United States v. Yeley-Davis*, in which case the Tenth Circuit analyzed a certification and affidavit signed by a Verizon records custodian and found that the documents "establish[ed] that the phone records are business records." 632 F.3d 673, 678 (10th Cir. 2011). On this point, the Court anticipates that the government will be able to show at trial that the Verizon records are business records under FED. R. EVID. 803(6). However, because the Court has not yet reviewed the Verizon records, Defendant's motion in limine is **RESERVED** on this point.

### VI.     Cell Phone Data

Next, Defendant re-asserts his argument from his first Omnibus Motions in Limine [Doc. No. 52], which was filed on August 29, 2025. At that time, this case was set for trial on September 9, 2025. In his first motion in limine, Defendant sought to exclude any cell phone data on the basis that the government had not produced the cell phone or evidence therefrom after Defendant's requests. In his amended Omnibus Motions in Limine [Doc. No.

68], Defendant now argues that the government should be precluded from offering the cell phone data because the government did not produce the cell phone data until September 3, which could not be downloaded until September 5, "less than one business day before trial." *Id.* at 16. However, this case was subsequently moved to the November 4, 2025 trial docket, rendering moot Defendant's argument that the delayed production hindered defense counsel's ability to sufficiently prepare for trial or otherwise prejudiced Defendant.

Defendant also contends that the "cell phone was dismantled and unavailable for independent evaluation." [Doc. No. 68, at 16]. However, the government has provided an e-mail to defense counsel [Doc. No. 72-1], sent on September 2, 2025, which reflects that the government made the cell phone available for a physical inspection and an independent data extraction. For these reasons, Defendant's motion in limine is **DENIED** on this issue.

### VII.    Remaining Items

Defendant also seeks to exclude and/or prohibit: unnoticed prior acts of Defendant; appeals to public sentiment or sympathy; improper witness vouching; government's counsel's references to representing "the people of the United States"; and exhibits left on permanent display. Because the government does not object to these motions in limine, they are **GRANTED**.

Defendant also invokes the rule of sequestration, to which the government does not object. *See* FED. R. EVID. 615. However, the Court declines to mandate that the government's case agent testify before any other witnesses and further declines to extend the rule of sequestration to opening statements and closing arguments. The Court also declines

Defendant's request to permit attorney-conducted voir dire. Finally, Defendant's request to file additional motions in limine is also denied.

### VIII.  Conclusion

For the reasons stated herein, Defendant's Amended Omnibus Motions in Limine [Doc. No. 68] are **GRANTED in part**, **DENIED in part**, and **RESERVED in part**. Nothing in this Order prevents the parties from making contemporaneous objections at trial, which shall be heard outside the hearing of the jury.

**IT IS SO ORDERED** this 31st day of October, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge